UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-CR-477(LMP/JFD)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>1. OLUWADAMILOLA OGOOLUWA BAMIGBOYE<br>2. REKEYA LIONESHA FRAZIER,<br><br>Defendants. | UNITED STATES' OBJECTIONS TO THE REPORT AND RECOMMENDATION |

The United States of America, by and through its undersigned attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Bradley M. Endicott, Assistant United States Attorney, and submits its objections to the Report and Recommendation.

## I. Statement of Facts

On December 16, 2025, a grand jury returned an Indictment charging the defendants with Aiding and Abetting Resisting and Impeding a Federal Officer (Count 1) in violation of 18 U.S.C. §§ 111(a)(1) and 2. Doc. 18. According to the original complaint on this matter (Doc. 1), on December 10, 2025, Homeland Security Investigations agents attempted to arrest Bamigboye, a Nigerian national, because he had overstayed a student visa. Two Agents approached Bamigboye and his girlfriend, Frazier, in the parking lot of Bamigboye's apartment complex as the two defendants stood outside their parked vehicle. During the encounter with the agents, Bamigboye jumped into the back seat of the vehicle

and commanded Frazier to drive. As Frazier began driving, one of the agents entered and remained in the vehicle with Frazier and Bamigboye.

The vehicle eventually stopped near the Plymouth Police Station whereupon Bamigboye fled the vehicle into a nearby grocery store, where he was ultimately arrested. Police also took Frazier into custody. During a Mirandized recorded interview, Bamigboye admitted that he tried to push the HSI agent out of the car and admitted that he saw Frazier and the agent wrestle over the gear shifter.

II. Argument

The United States respectfully objects to the Report and Recommendation insofar as it recommends suppression of the evidence arising from the December 10, 2025 encounter. The Government acknowledges that it did not present testimonial evidence at the suppression hearing establishing the precise sequence of events. However, any supposed deficiency in the existing record does not require the suppression recommended in the Report.

There are two issues that warrant de novo review here. First, the Report does not address when Bamigboye was actually seized for Fourth Amendment purposes. That question matters because if Bamigboye fled after agents identified themselves as HSI agents but before they physically attempted to restrain him, that conduct bears directly on whether, at the time of the seizure, agents had probable cause to believe Bamigboye was "likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). The Government respectfully requests that the Court receive limited additional evidence on that issue or resubmit that discrete issue to the Magistrate Judge.

Second, regardless of the legality of the initial attempt to take Bamigboye into immigration custody, the Report errs in concluding that evidence of Defendants' subsequent flight is suppressible as fruit of the initial arrest. Controlling Eighth Circuit precedent recognizes that criminal conduct committed in response to an unlawful stop or arrest may constitute a new and distinct crime that should not be excluded. *United States v. Sledge*, 460 F.3d 963, 966–67 (8th Cir. 2006); *United States v. Schmidt*, 403 F.3d 1009, 1016 (8th Cir. 2005); *United States v. Dawdy*, 46 F.3d 1427, 1430–31 (8th Cir. 1995).

A. The Court Should Receive Limited Additional Evidence Concerning When Bamigboye Was Seized and the Circumstances Existing at That Time.

The Report correctly observes that the Government did not present testimonial evidence at the suppression hearing establishing the facts surrounding the December 10 encounter. R&R at 4 and 10. The Government does not dispute that the present evidentiary record fails to establish that agents knew beforehand that Bamigboye was likely to escape when they initially approached him. But that does not resolve the ultimate question under § 1357(a)(2).

The Fourth Amendment, among other things, protects the right of the people against unreasonable searches and seizures. U.S. Const. amend. IV. A Fourth Amendment seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty" of a person. *United States v. Flores-Lagonas*, 993 F.3d 550 (8th Cir. 2021). A seizure does not occur unless the person actually submits to the "show of authority." *California v. Hodari D.*, 499 U.S. 621, 626–29 (1991).

The distinction between a show of authority and actual seizure is potentially dispositive here as it relates to the suppressed evidence. The Government proffers that additional evidence would establish the following sequence: HSI agents approached Bamigboye and Frazier and identified themselves as federal agents; after the agents identified themselves, Bamigboye attempted to flee after entered the rear seat of Frazier's vehicle and instructed her to drive; and thereafter agents physically attempted to remove Bamigboye from the vehicle and prevent the vehicle from leaving. That chronology would materially alter the analysis under § 1357(a)(2). Bamigboye would not merely have been unlawfully present in the United States. After learning that immigration officers were present, he would have taken affirmative steps to leave the scene and directed the driver to depart before any seizure occurred. Such conduct is directly relevant to whether the agents then had probable cause to believe that he was "likely to escape before a warrant can be obtained." *See* 8 U.S.C. § 1357(a)(2).

The Government recognizes that the existing record does not establish that sequence of events. But Rule 59 expressly permits the District Court, in conducting de novo review of a dispositive recommendation, to "receive further evidence" or "resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3); *see also United States v. Hayden*, 759 F.3d 842, 845-46 (8th Cir. 2014) (affirming the magistrate judge's grant of a supplemental hearing to permit additional testimony and other evidence that had been available at the first hearing).

Three considerations warrant such an approach. First, the remedy the Report recommends is severe. It would suppress the agents' account of an alleged assault against

federal officers. Second, the evidence would be limited to establishing when the seizure actually occurred and can be accomplished relatively swiftly. Third, there is no unfair surprise here. The facts are the very same facts since the inception of this case, first set forth in the sworn complaint affidavit.

This testimony would bear directly on when the Fourth Amendment analysis and it should be considered to determine whether Bamigboye engaged in conduct demonstrating that he was likely to escape before a warrant could be obtained.

B. Even If the Initial Immigration Arrest Was Without a Warrant, the Report Errs in Suppressing Evidence of Subsequent Criminal Conduct.

The Government separately objects because the Report's conclusion that the arrest was without probable cause does not follow Eighth Circuit precedent. In *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995), the Eighth Circuit held that "a defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest." The court reasoned that, even assuming the initial police action was unlawful, the defendant's subsequent resistance nevertheless provided independent probable cause for his arrest, and evidence obtained thereafter was admissible.

*United States v. Schmidt*, 403 F.3d 1009, 1016 (8th Cir. 2005), is more directly applicable. The defendant there was charged under 18 U.S.C. § 111 with assaulting, resisting, or impeding an officer. The district court suppressed testimony concerning events occurring after an allegedly unlawful entry. The Eighth Circuit reversed. It held that the defendant's subsequent conduct could constitute a "new and distinct crime" and emphasized that this conclusion did not depend on whether the officer's preceding conduct

was lawful. *Schmidt*, 403 F.3d at 1016. Here, as in *Schmidt,* even if the first attempted arrest was invalid because the agents were without a warrant, Bamigboye's resistance could furnish an independent basis for a second, lawful arrest, and the Fourth Amendment does not require suppression of the new crime.

*United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006) restates the rule in categorical terms: "When a defendant commits a new and distinct crime during an unlawful detention, the exclusionary rule does not bar evidence of the new crime." 460 F.3d at 966. Altogether, this line of authority is directly contrary to the Report's conclusion that the arrest was unconstitutional. Here, Bamigboye's flight from the agents constitutes the same kind of new and distinct offense contemplated by *Dawdy, Schmidt,* and *Sledge.* To the extent the defendants claim they did not recognize the agents or that they failed to identify themselves, this is a defense that should be presented at trial and should not be a basis for suppression.

C. The Post-Arrest Interview Likewise Should Not Be Suppressed Without Considering the Intervening Conduct.

The Report also recommends suppression of Bamigboye's post-arrest custodial interview as fruit of the unconstitutional arrest. R&R at 12. That conclusion is premature for the same reasons. If Bamigboye or Frazier committed a new and distinct criminal offense during the encounter, the officers could acquire an independent basis for arrest notwithstanding any illegality in the initial attempted immigration arrest. *Dawdy*, 46 F.3d at 1431; *Schmidt*, 403 F.3d at 1016; *Sledge*, 460 F.3d at 966–67. The Court should first

determine whether subsequent conduct supplied independent probable cause for Bamigboye's arrest.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court decline to adopt the Report and Recommendation to the extent it recommends suppression of evidence arising from the December 10, 2025 encounter.

Dated: September 29, 20266

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

s/Bradley M. Endicott
BY: BRADLEY M. ENDICOTT
Assistant United States Attorney
600 U.S. Courthouse
300 S. 4th Street
Minneapolis, MN 55415
651-848-1921
Attorney reg: 349872
Bradley.Endicott@usdoj.gov