**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

Plaintiff,

v.

Oluwadamilola Ogooluwa Bamigboye and Rekeya Lionesha Lee Frazier,

Defendant.

Case No. 25-CR-477 (LMP/JFD)

**SUPPLEMENTAL REPORT & RECOMMENDATION**

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for a Report and Recommendation. The undersigned earlier recommended that the arrest of these two Defendants be found to be an unconstitutional, warrantless arrest and that any evidentiary fruits of those unconstitutional arrests be suppressed. (*See* Sept. 1, 2026, Report and Recommendation, Dkt. No. 71.) The Court also asked for additional briefing on the question of what evidence is subject to suppression as fruit of the illegal arrest, and specifically whether the Court should also recommend that observations of Mr. Bamigboye's and Ms. Frazier's behavior at the time of arrest—in other words, the evidence which forms the basis of the charges in this case—must be suppressed. (*Id.*) The requested additional briefing has now been received. The Defendants Oluwadamilola Ogooluwa Bamigboye and Rekeya Lionesha Lee Frazier each filed a memorandum (Dkt. Nos. 78,[1] 79) and the Government filed

[1] It appears to the Court that Ms. Frazier's Memorandum in Support (Dkt. No. 78) is the exact same Memorandum in Support she filed with the Court on July 22, 2026. (*See* Dkt.

information and argument responsive to the Court's request as part of its objection to the Report and Recommendation (Dkt. No. 80). The Court's recommendations in its September 1, 2026 Report and Recommendation are unchanged. (Dkt. No. 71.) The Court stands by its recommendation that the in-custody statement given by Mr. Bamigboye and agent testimony about their interactions with Mr. Bamigboye and Ms. Frazier be suppressed. This Supplemental Report and Recommendation only addresses the question of whether additional evidence subject to suppression as fruit of the illegal arrest exists.

For the following reasons, the Court finds that the agents' observations of Mr. Bamigboye and Ms. Frazier are also fruits of the illegal arrest and therefore recommends that those observations should be suppressed pursuant to the undersigned's earlier recommendation (Dkt. No. 71).

## DISCUSSION

This case arises from an interaction between the two Defendants and federal immigration officers on December 10, 2025, which led to the warrantless arrest of Mr. Bamigboye and Ms. Frazier.[2]

---

No. 66.) The Court has already considered and addressed her July 22, 2026 Memorandum in its September 1, 2026 Report and Recommendation. (*See* Dkt. No. 71.) Accordingly, the Court will only consider Mr. Bamigboye's Supplemental Memorandum (Dkt. No. 79) in this Report and Recommendation.

[2] The September 1, 2026 Report and Recommendation (Dkt. No. 71 at 3-4) discusses the facts in greater detail. As noted in the R&R, the specific facts of the interaction are not known, because the Government provided no witness testimony at the hearing regarding the facts of the interaction and instead relies exclusively on the allegations in the Indictment and conclusory attorney statements to support its claims. (*See id.* at 3.)

## I. Legal Standard

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated…" U.S. Const. amend. IV. An arrest is a "seizure" as that word is used in the Fourth Amendment. *Torres v. Madrid*, 592 U.S. 306, 311 (2021). "A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause. Probable cause exists when the totality of circumstances at the time of arrest would lead a reasonable person to think the defendant committed or is committing a crime." *Webster v. Westlake*, 41 F.4th 1004, 1010 (8th Cir. 2022) (citing *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011); *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013)). The existence of probable cause is assessed as of the time of arrest. *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003).

The government has the burden of establishing the constitutional reasonableness of a warrantless seizure. *United States v. Johnson*, No. 23-CR-160 (NEB/JFD), 2024 WL 5432928, at *4 (D. Minn. Sept. 23, 2024) (citing *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984)). This burden lies with the government because it "h[o]ld[s] the information upon which the motion would be based and [] demanding the defendant present the motion with particularity when he d[oes] not have sufficient access to the information place[s] too heavy of a burden upon him." *United States v. Love*, 189 F.R.D. 557, 559 (D. Minn. 1999) (citing *United States v. Losing,* 539 F.2d 1174, 1179–80 (8th Cir. 1976)). For the burden to shift to the government, a defendant's motion must only "give[] the government sufficient notice to examine the facts relating to a suppression issue and to

prepare and present evidence at a hearing." *Id*.

The exclusionary rule precludes "the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis. v. United States*, 564 U.S. 229, 231-32 (2011). It's "sole purpose . . . is to deter future Fourth Amendment violations." *Id.* at 236-37. "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009). "The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." *Id.* at 143.

The exclusionary rule "extends as well to the indirect as the direct products" of Fourth Amendment violations. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963) (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920)). The Supreme Court has confirmed that "the exclusionary sanction applies to any 'fruits' of a constitutional violation—whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews*, 445 U.S. 463, 470 (1980); *see e.g., Brown v. Illinois*, 422 U.S. 590, 605 (1975); *Dunaway v. New York*, 442 U.S. 200, 219 (1979).

## II. Analysis

The Court concluded that the warrantless arrests of Mr. Bamigboye and Ms. Frazier on December 10, 2025 were not supported by probable cause and therefore violated their Fourth Amendment rights. (*See* Dkt. No. 71 at 10.) The remedy for an illegal arrest is the

suppression of any evidence obtained as a result of the arrest. *United States v. Williams*, 604 F.2d 1102, 1123 (8th Cir. 1979). The Court recommended granting the Motions to Suppress (Dkt. Nos. 51 and 53) in full and suppressing any and all evidence derived from the unconstitutional arrests in this case. The Court then sought assistance from the parties in identifying the body of evidence that needed to be suppressed as a result of the Court finding the arrests to be unconstitutional, over and above the post-arrest, custodial statement that Mr. Bamigboye gave to an FBI Agent and the arresting agents' testimony about their interactions with Mr. Bamigboye and Ms. Frazier. (The Court found in its September 1, 2026 Report and Recommendation that those two items of evidence, at minimum, were fruits of an unconstitutional arrest. (Dkt. No. 71 at 12.)) As noted above in footnote 1, Ms. Frazier has provided no new information to the Court. The Court therefore turns to the responses it received from the Government and from Mr. Bambigboye to its request for further information.

**1. Parking Lot Surveillance Video**

In his response to the Court's request for further information, Mr. Bamigboye asks that parking lot surveillance video be suppressed. There are only two brief references in the record regarding video. Ms. Frazier, in her original motion, sought suppression of "all video recordings and officer statements." (Dkt. No. 51 at 4.) The proximity of "video recordings" to "officer statements" leaves it unclear to the Court whether the reference is to surveillance video or to body-worn camera video. In his motion to suppress, Mr. Bamigboye describes the December 10 incident by saying, in part, "Surveillance video shows that agents in plain clothes . . ." (Dkt. No. 53 at 2.) This, however, is not a request

to suppress any such video, but just a part of Mr. Bamigboye's description of the incident.

Body-worn camera footage, if it exists, is recommended for suppression because any such footage only exists by virtue of an officer's participation in an illegal arrest.

The Court disagrees with Mr. Bamigboye about suppression of any parking lot surveillance video that might exist. Such video would show the events in the parking lot whether those events were an unconstitutional arrest, a constitutional arrest, or even something else entirely. Information about any surveillance video, particularly who made it and why, is, like many other things in this case, a mystery given the almost total lack of evidence produced at the motions hearing.[3] Assuming that "parking lot surveillance video" means video that is the property of a private company that surveilled the parking lot for its own purposes, and that the video was not obtained by the Government through exploitation of an unconstitutional arrest, for example by a search incident to an (unconstitutional) arrest, such video should not be suppressed.

Any surveillance video should also not be suppressed because neither Mr. Bamigboye nor Ms. Frazier identified the parking lot surveillance video as evidence whose suppression they sought, even though a defendant must "give[] the government sufficient notice to examine the facts relating to a suppression issue and to prepare and present evidence at a hearing." *Love*, 189 F.R.D. at 559. No adequate notice was given as to the parking lot surveillance video by either Mr. Bamigboye or Ms. Frazier. Mr. Bamigboye made no request at all, and Ms. Frazier made an ambiguous, non-specific request for

[3] "Almost total" because the Government did put into evidence Exhibit 1—a videotape of Mr. Bamigboye's post-arrest, custodial statement.

suppression of "all video recordings." Therefore, for both substantive and procedural reasons, the Court finds that on the present record, it cannot be said that the parking lot surveillance video is fruit of an unconstitutional arrest. The undersigned therefore does not recommend its suppression.

**2. Observations by Agents on December 10, 2025**

The Government once again alleges through attorney statements that "even if the first attempted arrest was invalid because the agents were without a warrant, Bamigboye's resistance could furnish an independent basis for a second, lawful arrest, and the Fourth Amendment does not require suppression of the new crime." (*Id.*) This argument is flawed, because it relies on there being evidence that Mr. Bamigboye or Ms. Frazier "committed a new and distinct criminal offense during the encounter." (*Id.*) The Government had the opportunity to produce that evidence at the motions hearing but introduced no evidence at all about the events of December 10, 2025. As the Government itself concedes in its most recent filing, "[t]he Government recognizes that the existing record does not establish that sequence of events." (*Id.* at 4.)

The Supreme Court has made clear that the "fruit of the poisonous tree" doctrine extends to "*items observed or words overheard* in the course of the unlawful activity." *Crews*, 445 U.S. at 470. (emphasis added.) The agents' observations were the fruit of an illegal arrest and the undersigned therefore recommends that they be suppressed.

The parking lot surveillance video should not be suppressed, because for the reasons above it is not the fruit of an unconstitutional arrest. Whether the video still exists and whether it can be authenticated are issues separate from suppression that must be dealt with

at trial.

Therefore, the Court affirms its recommendation that any and all fruits of the illegal arrest, which includes any observations of Mr. Bamigboye and Ms. Frazier, as well as all statements, be suppressed.

## CONCLUSION

Accordingly, based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Any and all fruits of the illegal arrests of Mr. Bamigboye and Ms. Frazier on December 10, 2025—which includes agents' observations of Mr. Bamigboye or Ms. Frazier, agent testimony about their interactions with Mr. Bamigboye or Ms. Frazier, and any statements the Defendants made—be suppressed.[4]

Date: October 8, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days

[4] The Court still recommends that Ms. Frazier's Motion to Suppress (Dkt. No. 51) and Mr. Bamigboye's Motion to Suppress (Dkt. No. 53) be **GRANTED**.

after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).