UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-CR-477(2) (LMP/JFD)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REKEYA LIONESHA FRAZIER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DEFENDANT'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO REPORT AND RECOMMENDATION AND SUPPLEMENTAL REPORT AND RECOMMENDATION** |

The defendant, Rekeya Frazier, by and through her attorney, hereby addresses the Government's Objections to the Supplemental Report and Recommendation (ECF 83) (hereinafter "Objections).

## FACTS

On December 10, 2025, Ms. Frazier was approached by unmarked and unidentified federal agents, one of whom entered the passenger area of her Jeep SUV without consent, without a warrant, and without probable cause. She started driving to the Plymouth Police Station because she was scared and did not know who was in her car. The other agents ran to their own vehicle and followed behind Ms. Frazier's Jeep until she arrived at her destination, the Plymouth Police Department. While enroute, the agent in the vehicle pulled a gun and pointed it at Ms. Frazier's head. As they reached the Plymouth Police Department the agents in the vehicle behind Ms. Frazier struck the rear of her vehicle. Ms. Frazier stopped, and the Plymouth Police ordered her out and arrested her.

The Government failed to produce any evidence or witnesses at the motion hearing in this case. The Report and Recommendation was filed on September 1, 2026, recommending granting the motions to suppress statements and evidence, with an invitation to all parties to define the scope of the items to be suppressed. (R&R, ECF 71). Following receipt of a response by Mr. Bamigboye, (ECF 79), the Court issued a Supplemental Report and Recommendation outlining the evidence to be suppressed. (Supp R&R, ECF 81). The Government filed objections to the R&R and to the Supplemental R&R (ECF 80 and 83 respectively), and this is Ms. Frazier's response to both.

## ANALYSIS

A. <u>Scope of the Suppression</u>

The R&R and Supp R&R recommend granting the Defendants' Motions to Suppress "in full and suppressing any and all evidence derived from the unconstitutional arrests in this case. This certainly includes the post-arrest, in-custody interview with Mr. Bamigboye and testimony from the agents present on December 10, 2025, about their interactions with Ms. Frazier and Mr. Bamigboye." (ECF 71, p. 12). The Court later set forth in its Supp R&R that it stood by "its recommendation that…agent testimony about their actions with Mr. Bamigboye and Ms. Frazier be suppressed." (ECF 81, p. 2).

The exclusionary rule applies not only to "'primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree.'" *United States v. Hastings*, 685 F.3d 724, 728 (8th Cir. 2012) citing *United States v. Riesselman*, 646 F.3d 1072, 1078

(8th Cir. 2011). The evidence is to be excluded if "the illegality is at least a but-for cause of obtaining the evidence." *Id.* If a defendant establishes a nexus between the constitutional violation and the particular evidence, the "ultimate burden of persuasion to show the evidence is untainted lies with the government." *Hastings*, at 728, citing *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007).

Following a discussion of the law and the facts, the Court concluded that body-worn camera video is recommended for suppression. (ECF 81, p. 6). The Court also recommended that all the agents' observations be suppressed because they were "the fruit of an illegal arrest," and because no evidence was presented at the hearing that either of the defendants "'committed a new and distinct criminal offense during the encounter.'" (ECF 81, p. 7). Further, the Court found that the fruit of the poisonous tree doctrine "extends to '*items observed or words overheard* in the course of the unlawful activity.'" (ECF 81, p. 7; italics in original) citing *United States v. Crews,* 445 U.S. 463, 470 (1980). Here, the R&R correctly states the rule requires exclusion of "testimony from the agents present on December 10, 2025 about their interactions with Ms. Frazier and Mr. Bamigboye." (ECF 70, at 12.)

The Government objects to the Supp R&R, noting the Eighth Circuit rule: "When a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's exclusionary rule does not bar evidence of the new crime." *U.S. v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006). For the proffered "new crime," the Government cites "Bamigboye's flight from agents." (ECF 80, at 6). However, this argument fails because the "new crime" as described by the agents is identical to the "old crime" as originally

charged, i.e., the government's original theory was that the defendants' actions while driving away from immigration officers (i.e., alleged "flight from agents") constituted the charged assault. (See, e.g., ECF 1-1, at 3-6.) Hence, the Court should reject the Government's reliance on the above "new crime" authority, and instead the court should affirm the R&R's correct application of the exclusionary rule.

The illegal seizure of Ms. Frazier began when the federal agent entered her vehicle without Ms. Frazier's consent, without probable cause, and without a warrant. From that moment on, anything the agent himself heard or observed must be suppressed because he was not legally within the vehicle at the time. Further, any observations by the agents who were following the Jeep; any statements amongst the various agencies; any calls to 911; and all related Minnesota Computer-Aided Dispatch (CAD) reports must also be suppressed.

B. Government's Motion to Reopen Hearing

The Government, in its Objections to the R&R, admits that it "did not present testimonial evidence at the suppression hearing establishing the facts surrounding the December 10 encounter" at issue in this motion to suppress. (ECF 80, at 3.) And also, the Government "does not dispute that the present evidentiary record fails to establish that agents knew beforehand that Bamigboye was likely to escape when they initially approached him." (Id.) Nonetheless, the Government asks the Court to re-open the record to allow it to fix the defect. (Id. at 4.)

The cited authority for this extraordinary request is FRCrP 59(b)(3), which authorizes a district court judge to "accept, reject, or modify the recommendation, receive

further evidence, or resubmit the matter to the magistrate judge with instructions." This echoes language and procedures contained in federal statutes, 18 USC 636(b)(1), and the Court's local rules, D. Minn. L.R. 72.2(b)(3). Under these authorities, the government's request to re-open the record fails on numerous grounds.

The Supreme Court has held that such re-opening and/or supplementation is permitted in the district court's discretion, but certainly not required. *U.S. v. Raddatz*, 447 U.S. 667, 673-76 (1980). Quite the contrary, the Court's local rules expressly discourage this: "Ordinarily, the district judge * * * relies on the record of proceedings before the magistrate judge." D. Minn. L.R. 72.2(b)(3). Numerous reasons for the general rule have been cited, including that such re-opening: effectively nullifies the magistrate judge's initial consideration of the matter; unnecessarily increases the Court's workload; and encourages "sandbagging." *U.S. v. Hathaway*, 2004 WL 234399, at *4 (D. Minn. Jan. 23, 2004) (collecting cases). Commonly, such extraordinary relief is granted only when the "moving party has proffered newly discovered evidence that was unknown to the party and could not through due diligence reasonably have been discovered by the party at the time of the original hearing." *Id.* at *5.

Here, there is no question that at the time of the original hearing, the Government was aware of the evidence and witnesses that it now wishes to place upon the factual record. Hence, there exists no excuse for the Government's failure to do so, and indeed the Government offers none. This is a classic case where the requested extraordinary relief should not be granted.

## CONCLUSION

Ms. Frazier objects to the Government's request for a new hearing, and she asks the District Court to follow the recommendations in the R&R and the Supplemental R&R to suppress all evidence gleaned from the poisonous tree, including the agents' observations and testimony.

Dated: October 28, 2026

Respectfully submitted,

*s/ Jean M. Brandl*

JEAN M. BRANDL
Attorney ID No. 0387260
Attorney for Ms. Frazier
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415