UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

v.

Oluwadamilola Bamigboye,

Defendant.

Court File No. 25-cr-477 (LMP/JFD)

**DEFENDANT'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO THE REPORT & RECOMMENDATION**

Before the Court is Magistrate Judge Docherty's Report and Recommendation ("R&R") recommending that Defendant's Motion to Suppress be granted. *See* ECF 71 at 16; 81 at 8. Magistrate Judge Docherty reasons that the government's wholesale failure to meet its burden to establish the lawfulness of Mr. Bamigboye's seizure makes exclusion appropriate. Despite Judge Docherty's careful review of the matter, the government asks the Court to reject the suppression recommendation and allow it to now admit evidence that it could have proffered months ago. *See* ECF 80, 83. For the reasons described below, the government's objections are without merit and the Court should adopt Magistrate Judge Docherty's Report and Recommendation in full.

## BACKGROUND

This case arises from an immigration enforcement action on December 10, 2025. As the R&R points out, the specific facts of the interaction between federal agents and the Defendants are unknown, as the government has provided no witness testimony nor other evidence and relies solely on the Indictment's allegations and conclusory attorney statements to support its claims. *See* ECF 71 at 3.

The factual allegations outline the interaction as follows. On the afternoon of December 10, 2025, Mr. Bamigboye and Ms. Frazier pulled into the parking lot of Mr. Bamigboye's apartment building in a vehicle driven by Ms. Frazier. Moments after Ms. Frazier parked the vehicle, two Homeland Security Investigations ("HSI") agents in plain clothes approached her and Mr. Bamigboye. The HSI agents then attempted to arrest Mr. Bamigboye due to a supposed lapse in his immigration status. Agents had no administrative warrant for Mr. Bamigboye's arrest. Nor was Mr. Bamigboye suspected of committing a crime.

When agents approached Mr. Bamigboye, he got into the back seat of Ms. Frazier's vehicle. One agent grabbed at Mr. Bamigboye in an unsuccessful attempt to physically remove him from the vehicle. Ms. Frazier then got into the driver's seat of the vehicle, and the other agent jumped into the front passenger seat as Ms. Frazier drove away. Mr. Bamigboye, terrified, called 911 and provided information about their location, direction of travel, and destination as Ms. Frazier drove to the New Hope police station to get help. According to Ms. Frazier, the agent in the car pointed a gun at her while she drove to force her into park. The agent in the car later told investigators that he believed Mr. Bamigboye and Ms. Frazier wanted to get him to the police department to have him arrested. When Ms. Frazier stopped the car on the street in front of the New Hope police station, Mr. Bamigboye ran into a nearby Hy-Vee, begging the employees to help him. A New Hope police officer arrived to the Hy-Vee within moments, and Mr. Bamigboye surrendered.

On December 16, 2025, Mr. Bamigboye was indicted, along with Ms. Frazier, on one count of Aiding and Abetting Resisting and Impeding a Federal Officer in violation of

18 U.S.C. § 2 and 18 U.S.C. § 111(a)(1). ECF 18. On May 15, 2026, Defendant moved to suppress all evidence adduced during and after his December 10, 2025 seizure by HSI agents. *See* ECF 53. Considering this Motion, Magistrate Judge Docherty concluded "that the arrests on December 10, 2025, were not supported by probable cause and therefore violated the Fourth Amendment rights of Mr. Bamigboye and Ms. Frazier." ECF 71 at 10. Accordingly, the Court recommended granting Defendant's Motion to Suppress in full—including suppression of a video submitted by the government recording the "the post-arrest, in-custody interview with Mr. Bamigboye and testimony from agents present on December 10, 2025 about their interactions with Ms. Frazier and Mr. Bamigboye." *Id*. at 12. The Court also directed the parties to provide supplemental briefing explaining whether additional evidence exists that must be suppressed, and specifically whether the Court should also recommend the suppression of observations of Mr. Bamigiboye and Ms. Frazier at the time of the arrest. *See id*. at 13. The parties did so. *See* ECF 79, 80. In its subsequent Supplemental Report & Recommendation, the Court affirmed its recommendation that any and all fruits of the illegal arrest, including observations of Defendants and their statements, be suppressed. *See* ECF 81 at 8.

## ARGUMENT

### I. THE COURT SHOULD ADOPT THE REPORT & RECOMMENDATION BECAUSE THE GOVERNMENT'S OBJECTIONS ARE WITHOUT MERIT.

Although the government admits that it failed to present any evidence in support of its claims at the motions hearing, it contends that any "supposed deficiency in the existing record" does not require the Court to suppress in accordance with the Report and

Recommendation. ECF 80 at 2. Instead, it urges the Court to admit previously-available evidence that will, it says, establish the lawfulness of Mr. Bamigboye's seizure. Next, the government argues that Mr. Bamigboye committed a new and distinct crime during the seizure, even assuming the seizure was unlawful, barring application of the exclusionary rule. For the reasons described, the government's arguments are unavailing, and the Court should adopt the Report and Recommendation in full.

**A. The Court should not admit new evidence because the government has already had the opportunity to proffer evidence in support of its claims.**

The government concedes that the existing record fails to establish that Mr. Bamigboye was likely to escape before the issuance of an administrative warrant under 8 § 1357(a)(2), thus making his seizure unlawful. However, it now asks this Court to admit evidence that would, it contends, establish the lawfulness of Mr. Bamigboye's seizure by showing that he was "likely to escape before a warrant [could] be obtained." 8 U.S.C. § 1357(a)(2). Because the government does not suggest that the evidence was previously unavailable, and because it failed to present any evidence at the motions hearing, the Court should exercise its discretion to deny the admittance of evidence against Mr. Bamigboye at this point.

Upon the filing of a report and recommendation by a magistrate judge, a party "may serve and file specific objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). The district judge may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR

72.2(b)(3). The district court's decision to consider new evidence not before the magistrate judge is a discretionary one that requires no "special justification." *United States v. Hayden*, 759 F.3d 842, 846 (8th Cir. 2014). However, the admittance of new evidence is generally disfavored. *See United States v. Hathaway*, No. 3-cr-245 (JRT/FLN), 2004 WL 234399, at *4 (D. Minn. Jan. 23, 2004) (collecting cases); *United States v. Wipf*, No. 3-cr-111 (JRT/RLE), 2003 WL 22283380, at *4 (D. Minn. Sept. 25, 2003) (same). In determining whether new evidence should be admitted after the magistrate judge's recommendation, courts consider whether the moving party has "proffered newly discovered evidence that was unknown to the party and could not through due diligence reasonably have been discovered by the party at the time of the original hearing." *Hathaway*, 2004 WL 234399, at *5.

In this case, the Court should deny the government's request to proffer evidence against Mr. Bamigboye. The evidence the government now seeks to admit is not newly discovered nor was it unavailable at the time of the original hearing. The government has suffered no shortage of opportunity to present its evidence. It could have done so at the July 6, 2026 motion hearing. *See* ECF 64. It could have requested to do so in the first round of post-hearing briefing. Or, it could have requested to do so in response to Judge Docherty's order for supplemental briefing—a rare direction made to ensure that the recommendation for exclusion was made with all possible care and deliberation. *See Hayden*, 759 F.3d at 846 (magistrate judge may consider new evidence before presenting a final report and recommendation to the district court). The government availed itself of none of these opportunities. It should not now be awarded leniency for the dereliction of

its basic duties. To admit evidence at this point would normalize prosecutorial incompetence, waste judicial resources, and nullify the magistrate judge's consideration of this matter. *See Wipf*, 2003 WL 22283380, at *4; *see also Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round.").

Finally, not only is the government's request wholly unjustified by its own terms, but the admittance of evidence at this juncture would unfairly prejudice Mr. Bamigboye. Mr. Bamigboye has spent more than nine months of the last year in the Sherburne County Jail as a result of this prosecution. Further consequences of the government's failure to exercise due diligence should not be his to bear—the government deserves no more chances to make its case against Defendant.

In sum, the Court should exercise its discretion to deny the admittance of evidence. The existing record, which the government concedes does not establish a lawful seizure, should stand, and the recommendation for suppression be adopted.

**B. Suppression is appropriate because the initial arrest was warrantless and the record does not support a claim of Defendant's intervening criminal conduct.**

The government next objects to the Report and Recommendation on the basis that suppression is an inappropriate remedy even assuming a Fourth Amendment violation because Mr. Bamigboye's conduct constituted a new and distinct crime. The Court should reject this argument because the record supplies no evidence to support a claim of Mr.

Bamigboye's criminal conduct. That is because the government has presented no evidence concerning Mr. Bamigboye's conduct at all.[1] The government falls quite short of its burden and the only conclusion available is that the seizure was unlawful—and the appropriate remedy for an unlawful seizure is suppression. This is the same conclusion Judge Docherty reached twice. *See* ECF 71 at 12; 81 at 7. Because the government has proffered no evidence to support its claim that Mr. Bamigboye committed a new and distinct crime such to make suppression inappropriate, the Court should adopt Judge Docherty's suppression recommendation.

Finally, it is worth emphasizing that the exclusionary rule is a prudential doctrine whose sole purpose is the deterrence of unlawful government conduct. *See Davis v. United States*, 564 U.S. 229, 236-237 (2011) (The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations."). The exclusionary rule's deterrent purpose makes suppression even more appropriate in this case. Since the outset of Operation Metro Surge, federal immigration agents have repeatedly seized suspected noncitizens without any probable cause. *See Hussen v. Noem*, 822 F. Supp. 3d 944, 987 (D. Minn. 2026) (describing pattern of unconstitutional immigration stops). Accordingly, application of the exclusionary rule in this case, to deter future unlawful seizures by federal immigration agents, harmonizes with the rule's essential purpose.

---

[1] The government argues that the Eighth Circuit case *United States v. Schmidt* is on point. 403 F.3d 1009 (8th Cir. 2005). It is not. That case involved a defendant who threw objects and physically injured the arresting agent during the course of a seizure. No similar facts have been alleged here.

## CONCLUSION

For the above-stated reasons, the government's objections are meritless, and the Court should adopt the Report and Recommendation in full.

Respectfully submitted,

DATED: November 5, 2026

*/s/Kevin C. Riach*
Kevin C. Riach, #389277
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Telephone: 612.203.8555
kevin@riachdefense.com

**ATTORNEY FOR DEFENDANT**